UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| MICHAEL MEJIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:25-cv-01453-MMM |
| | ) | |
| STERLING ADAMS, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

Plaintiff is proceeding *pro se* on a complaint under 42 U.S.C. § 1983 alleging violations of his constitutional rights.

Plaintiff's complaint is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (cleaned up).

ALLEGATIONS

Plaintiff names Internal Affairs Officer Sterling Adams, John Does 1 and 2, Reviewing Officer A. Thompson, Lieutenant C. Myers, Grievance Officer Kellie Dennis, Warden Cherryle Hinthorne, Administrative Review Board member Ryan Kilduf, Lieutenant Shawn Thrush, Correctional Officer Mason Guerra, and Illinois Department of Corrections Director Latoya Hughes, as Defendants.

1

**Investigative Report Issues**

On May 8, 2023, Plaintiff was placed in segregation at Illinois River Correctional Center. On May 10, 2023, Plaintiff was served with an Investigative Disciplinary Report. The Investigative Report was authored by Defendant Myers, reviewed by Defendant Thompson, investigated by Doe 2 and reviewed by Doe 1. The Investigative Report "listed Plaintiff in observation as Kevon Cooper ID# Y53375. Ironically, it then goes on to state that 'Mejia identified by state issued ID and O360 [Offender 360 housing placement software].'" Plaintiff alleges these Defendants failed to abide by the Administrative Codes, thereby violating Plaintiff's due process rights.

On May 16, 2023, Plaintiff filed a grievance regarding the Investigative Report. On June 12, Defendant Dennis upheld the issuance of the Investigative Report via denial of Plaintiff's grievance. Plaintiff asserts that this was a Fourteenth Amendment violation. On June 12, 2023, Defendant Warden Hinthorne upheld the issuance of the Investigative Report by concurring with Dennis's denial of Plaintiff's grievance. Plaintiff was, apparently, transferred to Western Illinois Correctional Center from Illinois River Correctional Center during this timeframe. Hinthorne did not mail the grievance denial decision to Plaintiff until September 1, 2023, so Plaintiff missed his 30-day deadline to appeal to the Administrative Review Board. Plaintiff wrote to Defendant Kilduf informing him that the late appeal was due to Hinthorne's delay. Kilduf deemed Plaintiff's grievance moot because Kilduf conflated Plaintiff's grievance regarding the Investigative Report with a later grievance Plaintiff filed regarding a Disciplinary Report (discussed below). Plaintiff forwarded Defendant Director Hughes

correspondence about the Disciplinary Report that replaced the Investigatory Report, and asked Hughes to direct Kilduf to address Plaintiff's grievance regarding the Investigatory Report. Plaintiff did not receive a response. Plaintiff asserts Kilduf and Hughes thus violated his Fourteenth Amendment due process rights by ending his grievance and upholding the issuance of the Investigatory Report.

**Disciplinary Report Issues**

On May 10, 2023, Plaintiff was taken to the segregation TV room, still at Illinois River Correctional Center. Defendant Adams attempted to question Plaintiff. Based on the documents attached to Plaintiff's complaint, Adams was questioning Plaintiff regarding allegations that another inmate entered Plaintiff's cell and engaged in a fight with Plaintiff. Plaintiff told Adams that he had no statement to make. Adams told Plaintiff that he could get Plaintiff a job in the law library if Plaintiff worked with him, and that he could make sure Plaintiff was released from segregation without a ticket. Plaintiff refused to make any statement. Adams then told Plaintiff that he would "make sure Plaintiff received a ticket, and was found guilty no matter what."

On May 11, 2023, Adams issued what Plaintiff asserts was a false Disciplinary Report. That Disciplinary Report charged Plaintiff with: 110 Impeding an Investigation, 214 Fighting, 308 Giving False Information to an Employee, and 601 Aiding and Abetting Unauthorized Movement. Plaintiff asserts Adams violated Plaintiff's "First Amendment Rights Not To Be A Snitch."

Plaintiff went before an Adjustment Committee comprised of Defendants Thrush and Guerra on May 19, 2023. Plaintiff was found guilty on the charges. The 601 charge

was later expunged. Plaintiff alleges Thrush and Guerra violated his Fourteenth Amendment rights through the way they handled the hearing, and the evidence they considered and did not consider. He alleges Adams conspired with them to influence their decision. Plaintiff was sanctioned with seven days in segregation but had already been in segregation for eleven days by the time of the hearing.

On June 11, 2023, Plaintiff filed a grievance regarding the Disciplinary Report and the Final Summary Report issued by the Adjustment Committee. On January 2, 2024, Kilduf and Hughes denied Plaintiff's grievance. On March 15, 2024, Plaintiff forwarded to Hughes correspondence about the denial of the grievance, pointing out issues that he believed existed, and asked that the Disciplinary Report be expunged. Plaintiff did not receive a response.

**Additional Grievance**

On June 21, 2023, Plaintiff filed a grievance requesting compensation for the four additional days he spent in segregation. On February 13, 2024, Kilduf and Hughes denied the grievance.

## ANALYSIS

Plaintiff's allegations do not state a claim for relief.

First, Plaintiff does not state a First Amendment claim. To state such a claim Plaintiff must allege that he was penalized for engaging in protected speech. *See Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015); *Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009). Refusing to assist in the investigation of a prison security violation is not protected speech. *Caffey v. Maue*, 679 F. App'x 487, 490 (7th Cir. 2017).

4

> Prison administrators often use the "stick" of withholding amenities and privileges to facilitate cooperation with their goals. *See United States v. Boyd*, 608 F.3d 331, 334 (7th Cir. 2010) (discussing federal Inmate Financial Responsibility Program). More importantly, prisoners may be compelled to disclose information during internal investigations provided they are not punished for refusing to make self-incriminating statements without immunity. *Riggins v. Walter*, 279 F.3d 422, 430 (7th Cir. 1995). Caffey never hinted that answering the investigators' questions might incriminate him, so he was not privileged to refuse.

*Id.*

Here, Plaintiff was offered immunity if he agreed to cooperate. When he failed to cooperate and assist the investigation, he was, permissibly, charged with impeding the investigation along with other related charges. Plaintiff has not alleged a plausible First Amendment claim.

Plaintiff's allegations also do not state a Fourteenth Amendment due process claim against any Defendant, because he has not alleged that he was deprived by the state of any protected interest.

"When an inmate is placed in conditions more restrictive than those in the general prison population, whether through protective segregation like suicide watch or discretionary administrative segregation, his liberty is affected only if the more restrictive conditions are particularly harsh compared to ordinary prison life or if he remains subject to those conditions for a significantly long time." *Earl v. Racine Cty. Jail*, 718 F.3d 689, 691 (7th Cir. 2013); *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (holding that the plaintiff's six months and one day in disciplinary segregation did not implicate liberty interest because he was allowed yard time and weekly showers and was not deprived of all human contact or sensory stimuli); *see also Singh v. Gegare*, 651 F.

App'x 551, 555 (7th Cir. 2016) (concluding that the plaintiff's 105 days in disciplinary segregation did not implicate liberty interest because "he was permitted several hours of yard time and several showers each week, as well as authorized to leave his cell for visits and appointments").

When assessing a claim related to disciplinary segregation, "the key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population," *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997), "because, in every state's prison system, any member of the general prison population is subject, without remedy, to assignment to administrative segregation or protective custody at the sole discretion of prison officials." *Lekas v. Briley*, 405 F.3d 602, 609 (7th Cir. 2005); *see also Sandin v. Conner*, 515 U.S. 472, 486 (1995) (holding that plaintiff's "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest" because "disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody" and thus, the plaintiff's "confinement did not exceed similar, but totally discretionary, confinement in either duration or degree of restriction").

Here, Plaintiff alleges he was sentenced to seven days in segregation, and due to the administrative delay in the hearing on his charges he was held in segregation an additional four days. This period is insufficient to indicate a loss of any protected liberty interest. And Plaintiff has not alleged that that the conditions in disciplinary

6

segregation were significantly and atypically harsh compared to the conditions in administrative or protective custody segregation, which are, by definition, already harsh and difficult.

**IT IS THEREFORE ORDERED:**

1. **Pursuant to its merit review of the Complaint under 28 U.S.C. § 1915A, the Court finds Plaintiff has failed to state a claim. Plaintiff will be allowed 21 days to file an amended complaint if he believes he can do so, and state a claim, in good faith and consistent with this order. If Plaintiff does not amend then the suit will be dismissed without prejudice.**

Entered this 20th day of November, 2025.

_s/Michael M. Mihm_
MICHAEL M. MIHM
UNITED STATES DISTRICT JUDGE
